NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| MORDECHAI ROSENTHAL, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SHARKNINJA OPERATING LLC,<br><br>Defendant. | Civ. No. 16-1048<br><br>**OPINION** |

THOMPSON, U.S.D.J.

      This matter comes before the Court upon the motion to dismiss the complaint of Plaintiff Mordechai Rosenthal ("Plaintiff") brought by Defendant SharkNinja Operating LLC ("Defendant"). (ECF No. 18). Defendant moves to dismiss the complaint on the basis of Federal Rules of Civil Procedure 9(b) and 12(b)(6). (*Id.*). Plaintiff opposes. (ECF No. 21). The Court has issued the Opinion below based upon the written submissions of the parties and without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons stated herein, Defendant's motion to dismiss will be granted.

## BACKGROUND

      Plaintiff's allegations are as follows: Defendant is a company that manufactures, markets, and sells vacuums through a network of retailers and distributors. On or about April 25, 2014, Plaintiff purchased one of Defendant's vacuums from a Walmart store located in Howell, New Jersey. Plaintiff purchased the vacuum in part due to Defendant's pervasive advertising of the vacuum as a quality and reliable product. The vacuum came with a five-year limited warranty.

1

On or about December 18, 2015, Plaintiff began experiencing problems with his vacuum. In particular, the vacuum would not turn on after he plugged it into an outlet in his home, despite having worked a few minutes earlier when plugged into another outlet. Plaintiff called Defendant's customer service center to troubleshoot the problem. The customer service representative advised that the vacuum's motor had overheated and told Plaintiff that he should unplug the vacuum and wait forty-five minutes before plugging it back in and turning it on.

Sometime after Plaintiff had unplugged the vacuum for forty-five minutes, Plaintiff's wife, Sara Rosenthal ("Mrs. Rosenthal"), plugged the vacuum into an outlet and turned it on. The vacuum appeared to work for a few minutes and then shut off. Mrs. Rosenthal unplugged the vacuum and plugged it in again. The vacuum started, but then the plug in the outlet began to smoke. Mrs. Rosenthal saw sparks and flames coming out of the outlet. Mrs. Rosenthal immediately switched off the vacuum and pulled out the plug, but one of the plug's prongs detached and remained in the outlet. When Plaintiff returned home, he used needle nose pliers with a rubber end to pull out the prong that was stuck in the outlet. Subsequent testing of the outlet indicated that the outlet was functioning properly. However, as a precaution, Plaintiff and his family have not used the outlet since this incident. Plaintiff purchased a replacement vacuum because the vacuum is no longer operational and Plaintiff believes that it is a safety hazard.

Plaintiff alleges that Defendant was aware of this vacuum's electrical defects and tendency to malfunction but failed to disclose these facts to Plaintiff and other vacuum purchasers. Consequently, on February 24, 2016, Plaintiff filed a class action complaint against Defendant, claiming that Defendant violated the New Jersey Consumer Fraud Act (CFA). On June 1, 2016, Defendant filed a motion to dismiss. This motion is presently before the Court.

DISCUSSION

  A. Legal Standard

A motion under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id*. (quoting *Ashcroft v. Iqbal*, 56 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The court may disregard any conclusory legal allegations. *Id*. Finally, the court must determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679). Such a claim requires more than mere allegation of an entitlement to relief or demonstration of the "mere possibility of misconduct;" instead, the facts must allow a court to reasonably infer "that the defendant is liable for the misconduct alleged." *Id*. at 210, 211 (quoting *Iqbal*, 556 U.S. at 678-79).

  B. Analysis

Defendant argues that the complaint should be dismissed because Plaintiff's claim under the Consumer Fraud Act (CFA) is subsumed by New Jersey's Product Liability Act (PLA). In the alternative, Defendant asserts that Plaintiff fails to plead the elements of a CFA claim. The Court will address each argument in turn.

   1. *Subsumption under the PLA*

Defendant first argues that the complaint should be dismissed because Plaintiff's claim is subsumed by the PLA. Defendant asserts that the CFA claim is subsumed because the core issue of the lawsuit is not the harm caused to the allegedly defective vacuum, but the harm the vacuum caused to Plaintiff's other property and the physical danger it posed to Plaintiff.

Under New Jersey law, "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty" is subsumed by the PLA, and may only be pursued under that Act. N.J. Stat. Ann. § 2A:58C-1(b)(3); *In re Lead Paint Litigation,* 924 A.2d 484, 503 (N.J. 2007) (noting that "the PLA is both expansive and inclusive, encompassing virtually all possible causes of action relating to harms caused by consumer and other products"); *Green v. Gen. Motors Corp.*, 709 A.2d 205, 209 (N.J. Super. Ct. App. Div. 1998). However, the PLA defines the type of "harm" caused by a product to include the following: "(a) physical damage to property, *other than to the product itself;* (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm; and (d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c) of this paragraph." N.J. Stat. Ann. § 2A:58C-1(b)(2) (emphasis added).

Given the above, New Jersey courts have found that "[t]he Product Liability Act and common law tort actions do not apply to damage caused to the product itself, or to consequential but purely economic losses caused to the consumer because of a defective product." *Ford Motor Credit Co., LLC v. Mendola*, 48 A.3d 366, 374 (N.J. Super. Ct. App. Div. 2012) (citing *Dean v. Barrett Homes, Inc.,* 8 A.3d 766 (N.J. 2010); *Alloway v. Gen. Marine Indus., L.P.*, 695 A.2d 264 (N.J. 1997); *Spring Motors Distribs., Inc. v. Ford Motor Co.*, 489 A.2d 660 (N.J. 1985)). For

instance, *Kuzian v. Electrolux Home Products, Inc.*, 937 F. Supp. 2d 599, 608 (D.N.J. 2013), concerned a suit over purportedly defective ice makers that failed to produce ice, leaked water into the refrigerators, and consequently caused food spoilage and damage to flooring, walls, and other personal property beyond the refrigerator.  The Court ruled that plaintiffs' claims for fraud and breach of implied warranties were not subsumed by the PLA because "[e]ven though spoiled food and damage to floors, walls, and other property do not strictly constitute harm to the refrigerator itself, they are consequential, anticipated economic losses resulting from the defect in the refrigerator."  *Id.*; *see also Estate of Edward W. Knoster v. Ford Motor Co.,* 200 F. App'x 106, 108 (3d Cir. 2006) (CFA claim for damage to the product itself not subsumed where alleged gas pedal malfunction in a Ford Taurus led to crash and destruction of the product); *Shannon v. Howmedica Osteonics Corp.,* No. 09-4171, 2010 WL 1492857, at *2 (D.N.J. Apr. 14, 2010) (CFA claim for damage to the product itself not subsumed where knee insert product was allegedly damaged due to improper packaging).

  In this case, Plaintiff alleges that the defective vacuum had an electrical malfunction that damaged the vacuum and made it inoperable.  This alleged harm is physical damage to the product itself, a harm that is explicitly excluded from coverage by the PLA.  Even though the purported damage to the outlet and the wall do not strictly constitute harm to the vacuum itself, they are "consequential, anticipated economic losses" resulting from the alleged defect in the vacuum.  *Kuzian*, 937 F. Supp. 2d. at 608.  As such, their inclusion does not mean that Plaintiff's CFA claim is subsumed by the PLA.  To the extent Plaintiff describes other harms that would lead to the claim being subsumed by the PLA, such as the risk of physical injury, these harms do not form the "core issue" or "heart" of the lawsuit.  *See Kury v. Abbott Labs., Inc.*, No. 11-803, 2012 WL 124026, at *4 (D.N.J. Jan. 17, 2012); *Sinclair v. Merck & Co.*, 948 A.2d 587, 596 (N.J.

5

2008). They are only mentioned sporadically throughout the complaint, and they are not discussed in the section where Plaintiff details the purported harms and damages. (*See* Compl. ¶ 34). Therefore, the inclusion of these harms does not lead to Plaintiff's CFA claim being subsumed by the PLA. Because the Court finds that Plaintiff's CFA claim is not subsumed by the PLA, Plaintiff's motion to dismiss will not be granted on this basis.

    2. *Elements of a CFA Claim*

Defendant also argues that the complaint should be dismissed because Plaintiff fails to state a claim under the CFA. To state a claim under the CFA, a plaintiff must allege sufficient facts to demonstrate: "(1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 97 (D.N.J. 2011). The CFA recognizes three types of unlawful conduct: affirmative representations, knowing omissions, and regulation violations. *Mladenov v. Wegmans Food Markets, Inc.*, 124 F. Supp. 3d 360, 373 (D.N.J. 2015). Defendant argues that Plaintiff alleges no regulatory violation and fails to adequately allege an affirmative misrepresentation, knowing omission, ascertainable loss, or causation.

The Court agrees that Plaintiff has not adequately alleged the second element of a CFA claim, an ascertainable loss. To meet the ascertainable loss hurdle for a case under the CFA, a plaintiff must establish either out-of-pocket loss or a demonstrated loss in value. *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 792 (N.J. 2005). "[A] claim of loss in value must be supported by sufficient evidence to get to the factfinder. To raise a genuine dispute about such a fact, the plaintiff must proffer evidence of loss that is not hypothetical or illusory." *Id.* A plaintiff need not actually spend the money for repairs; rather, "an estimate of damages, calculated with a reasonable degree of certainty," will suffice. *Cox v. Sears Roebuck & Co.*, 647

6

A.2d 454, 464 (N.J. 1994). The plaintiff's payment of the purchase price of the product does not meet the ascertainable loss requirement; the replacement price of the product, not the purchase price, constitutes the plaintiff's ascertainable loss. *Shannon v. Howmedica Osteonics Corp.*, No. 09-4171, 2010 WL 421096, at *3 (D.N.J. Feb. 1, 2010); *Parker v. Howmedica Osteonics Corp.*, No. 07-2400, 2008 WL 141628, at *4 (D.N.J. Jan. 14, 2008); *see also Furst v. Einstein Moomjy, Inc.*, 860 A.2d 435, 442 (N.J. 2004).

In the complaint, Plaintiff alleges the following losses: the purchase price of the vacuum, the potential expense to repair or replace the vacuum, and the potential expense to repair the outlet and wall. (Compl. ¶ 34). Plaintiff lists the purchase price of the vacuum as $149.99. (*Id.*). However, as discussed above, the purchase price of the vacuum does not meet the ascertainable loss requirement. None of the other potential expenses alleged include cost estimates. Consequently, none of these potential expenses provide the "estimate of damages, calculated with a reasonable degree of certainty" required to demonstrate an ascertainable loss that is not "hypothetical or illusory." For this reason, Plaintiff has not adequately pled an ascertainable loss.

Construing the complaint in the light most favorable to Plaintiff, the facts are not sufficient to show that Plaintiff has a plausible claim for relief. Therefore, Defendant's motion to dismiss will be granted for failure to state a claim.[1]

---

[1] Because the Court finds that Plaintiff has not adequately pled one of the elements of his claim, the Court will not address Defendant's other arguments for failure to state a claim.

## CONCLUSION

For the reasons above, Defendant's motion to dismiss will be granted, and the complaint will be dismissed without prejudice. Plaintiff will be granted leave to file an amended complaint within thirty days. A corresponding order follows.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.

**Date:** August 1, 2016